**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

PANGEA CAPITAL MANAGEMENT, LLC,    :    Case No.: 1:16-cv-00840-LAK

                       :

             Petitioner,    :    Hon. Lewis A. Kaplan

                       :

          -against-    :    Document Filed Electronically

                       :

JOHN R. LAKIAN,    :

                       :

          Respondent.    :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

---

## MEMORANDUM OF LAW IN OPPOSITION TO PETITION TO CONFIRM ARBITRATION AWARD AND IN SUPPORT OF MOTION TO VACATE OR MODIFY ARBITRATION AWARD

---

                                      McLAUGHLIN & STERN, LLP
                                        260 Madison Avenue
                                        New York, New York 10016
                                        Tel.: (212) 448-1100
                                        Fax: (212) 448-0066

                                        *Attorneys for Respondent John R. Lakian*

On the Brief:  Steven J. Hyman, Esq.
                  Daniel J. Horwitz, Esq.
                  Matthew D. Sobolewski, Esq.
                  Chester R. Ostrowski, Esq.

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................ i

PRELIMINARY STATEMENT ................................................................. 1

STATEMENT OF FACTS ......................................................................... 3

THE APPLICABLE LEGAL STANDARDS .............................................. 5

ARGUMENT .......................................................................................... 7

    POINT I
    Lakian's Rights Were Blatantly Prejudiced by Claimants'
    Submission and Arbitrator Crane's Consideration of the
    Indictment and Other Extra-Evidentiary Materials ........................... 7

    POINT II
    Arbitrator Crane Manifestly Disregarded the Law by Awarding
    Punitive Damages Without Finding a Public Wrong ......................... 10

    POINT III
    Arbitrator Crane Manifestly Disregarded the Law by Failing
    to Enforce the PSLRA's Bar to RICO Claims ................................. 13

CONCLUSION ....................................................................................... 18

## **TABLE OF AUTHORITIES**

<u>**Cases**</u>

*Aferiat v. Grossman*, No. 96 Civ. 1774(JRK), 1998 WL 99797
(S.D.N.Y. Mar. 4, 1998). ........................................................................... 8

*Am. Postal Workers Union, AFL–CIO v. U.S. Postal Serv.*, 52 F.3d 359
(D.C. Cir. 1995). ........................................................................................ 7

*Am.  Transit Ins. Co. v. Associated Int'l Ins. Co.*, 261 A.D.2d 251,
690 N.Y.S.2d 237 (1st Dep't 1999). ........................................................ 12

*Areca, Inc. v. Oppenheimer & Co., Inc.*, 960 F. Supp. 52 (S.D.N.Y. 1997). ........................... 9, 10

*Attia v. Audionamix, Inc.*, No. 14 Civ. 706 (RMB), 2015 WL 5580501
(S.D.N.Y. Sept. 21, 2015). ......................................................................... 10

*Bald Eagle Area School Dist. v. Keystone Financial, Inc.*,
189 F.3d 321 (3d Cir. 1999).................................................................... 17

*Banc of Am. Comm. Fin. Corp. v. Issacharoff*, 188 Misc.2d 790,
728 N.Y.S.2d 861 (Sup. Ct., N.Y. Cty. 2000). .................................... 12

*Blythe v. Deutsche Bank AG*, 299 F.Supp.2d 272 (S.D.N.Y. 2005). ........................... 16

*Coventry Enterprises LLC v. Sanomedics Int'l Holdings, Inc.*,
No. 14 Civ. 8727(NRB), 2015 WL 1564990 (S.D.N.Y. Apr. 1, 2015). ...................... 1 n.1

*Drayer v. Krasner*, 572 F.2d 348 (2d Cir. 1978). .......................................... 8

*Fezzani v. Bear, Stearns & Co., Inc.*, No. 99 Civ. 0793 (RCC),
2005 WL 500377 (S.D.N.Y. Mar. 2, 2005). ........................................ 14

*Garcia v. Garcia*, 33 Misc.3d 1237(A), 941 N.Y.S.2d 537
(Sup. Ct., Kings Cty. 2011)................................................................. 18 n.4

*Gertz v. Ponsoldt*, 297 F.Supp.2d 719 (D. Del. 2003)................................ 17

*Jock v. Sterling Jewelers Inc.*, 646 F.3d 113 (2d Cir. 2011)........................ 6, 13, 17

*Levi v. Commonwealth Land Title Ins. Co.*, No. 09 Civ. 8012 (SHS),
2013 WL 5708402 (S.D.N.Y. Oct. 21, 2013). .................................... 10, 11

*Man Choi Chiu v. Winston Chiu*, 71 A.D.3d 646, 896 N.Y.S.2d 131
(2d Dep't 2010)............................................................................... 18 n.4

*Mayline Enterprises v. Milea Truck Sales Corp.*, 641 F.Supp.2d 304
  (S.D.N.Y. 2009). ................................................................................. 10

*MLSMK Inv. Co. v. JP Morgan Chase & Co.*, 651 F.3d 268 (2d Cir. 2011)................... 13, 14, 17

*Morelite Constr. Corp. v. N.Y.C. Dist. Council Carpenters Benefits Funds*,
  748 F.2d 79 (2d Cir. 1984)................................................................... 8

*Nat'l Casualty Co. v. First State Ins. Group*, 430 F.3d 492 (1st Cir. 2005)................................. 8

*Nat'l Indemn. Co. v. IRB Brasil Resseguros S.A.*, No. 15 Civ. 3975(NRB),
  2016 WL 1030139 (S.D.N.Y. Mar. 10, 2016). ................................................ 9

*N.Y. Univ. v. Continental Ins. Co.*, 87 N.Y.2d 308, 639 N.Y.S.2d 283 (1995). ..................... 10-11

*OSRecovery, Inc. v. One Groupe Int'l, Inc.*, 354 F.Supp.2d 357 (S.D.N.Y. 2005). ..................... 17

*Pennsylvania Power Co. v. Local Union No. 272*, 276 F.3d 174 (3d Cir. 2001). ........................ 7

*Pitta v. Hotel Ass'n of N.Y.C., Inc.*, 806 F.2d 419 (2d Cir. 1986). ................................. 9

*Porzig v. Dresdner, Kleinwort, Benson, North Am. LLC*,
  497 F.3d 133 (2d Cir. 2007)................................................................ 5

*Rocanova v. Equitable Life Assur. Soc. of U.S.*, 83 N.Y.2d 603,
  612 N.Y.S.2d 339 (1994). ............................................................. 10, 11

*Roy v. Buffalo Philharmonic Orchestra Society, Inc.*, No. 15-cv-0283(MAT),
  2016 WL 492706 (W.D.N.Y. Feb. 9, 2016). .............................................. 12 n.3

*Schwartz v. Merrill Lynch & Co.*, 665 F.3d 444 (2d Cir. 2011) ......................... 12 n.3

*Sociedad Armadora Aristomenis Panama, S.A. v. Tri-Coast S.S. Co.*,
  184 F. Supp. 738 (S.D.N.Y. 1960). ...................................................... 6

*Spector v. Torenberg*, 852 F. Supp. 201 (S.D.N.Y. 1994)................................... 6

*Stechler v. Sidley, Austin Brown & Wood, LLP*, 382 F.Supp.2d 580
  (S.D.N.Y. 2005). ......................................................................... 16

*Square Plus Operating Corp. v. Local Union No. 917*, No. 90 Civ. 1713(LJF),
  1992 WL 116610 (S.D.N.Y. May 15, 1992). ................................................. 10

*Tcherepnin v. Knight*, 389 U.S. 332, 88 S. Ct. 548 (1967). ......................................... 15

*Thomas H. Lee Equity Fund V, L.P. v. Mayer Brown, Rowe & Maw LLP*,
   612 F.Supp.2d 267 (S.D.N.Y. 2009) ........................................................ 13, 14

*TVT Records v. Island Def Jam Music Group*, 412 F.3d 82 (2d Cir. 2005). ................................ 11

*U.S. ex rel. Kreindler & Kreindler v. United Technologies Corp.*,
   985 F.2d 1148 (2d Cir. 1993) ...................................................................... 1 n.1

*Walker v. Resource Development Co. Ltd., LLC*, 791 A.2d 799 (Del. Ch. 2000). ................. 18 n.4

*Westerbeke Corp. v. Daihatsu Motor Co.*, 304 F.3d 200 (2d Cir. 2002). ...................................... 6

*W.S.A., Inc. v. ACA Corp.*, Nos. 94 Civ. 1493(CSH), 94 Civ. 1868(CSH),
   1998 WL 635536 (S.D.N.Y. Sept. 15, 1998) ...................................................... 11

## Statutes, Rules, and Legislative History

9 U.S.C. § 10 ........................................................................................................... 5-6, 7

9 U.S.C. § 11 ............................................................................................................... 6

9 U.S.C. § 12 ............................................................................................................... 1

15 U.S.C. § 78c ......................................................................................................... 15

18 U.S.C. § 1964 ....................................................................................................... 13

H.R. Conf. Rep. No. 104-369 ..................................................................................... 14

Respondent John R. Lakian ("Lakian" or "Respondent") respectfully submits this memorandum of law in opposition to the Petition to Confirm Arbitration Award (the "Petition") filed in this proceeding by petitioner Pangea Capital Management, LLC ("Pangea" or "Petitioner") and in support of Lakian's Motion to Vacate or Modify Arbitration Award filed simultaneously herewith (the "Motion").  The Motion and all supporting papers (including, without limitation, this memorandum of law) are being filed and served now in order to comply with the provision of Section 12 of the Federal Arbitration Act (the "FAA"), 9 U.S.C. § 12, which requires a notice of motion to vacate, modify, or correct an award to be served within three months after the award is filed or delivered.  Nothing contained in the Motion or any of the supporting papers should be construed to waive, limit, prejudice, or otherwise adversely affect any of the jurisdictional challenges raised by Lakian in his pending motion to dismiss the Petition for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, all of which are hereby expressly reserved.[1]

## PRELIMINARY STATEMENT

By and through its Petition, Pangea urges this Court to confirm the Amended Partial Final Award dated January 15, 2016 (the "Arbitration Award"), which was issued by the Honorable Stephen G. Crane, J.A.D. (Ret.) ("Arbitrator Crane") in connection with an arbitration initiated by

---

[1]     Lakian's reservation of the jurisdictional challenges raised in his motion to dismiss is included only in an abundance of caution given the axiomatic legal principle that "'parties cannot confer [subject-matter] jurisdiction on a federal court by consent or stipulation,' . . . and '[f]ederal courts have a duty to inquire into their subject matter jurisdiction *sua sponte*, even when the parties do not contest the issue.'" *Coventry Enterprises LLC v. Sanomedics Int'l Holdings, Inc.*, No. 14 Civ. 8727(NRB), 2015 WL 1564990, at *2 (S.D.N.Y. Apr. 1, 2015) (Buchwald, J.) (internal citations omitted).  For the reasons set forth in his pending motion to dismiss, Lakian maintains that the Court lacks subject-matter jurisdiction and, thus, should not ever reach the merits of either the Petition or the Motion.  *See*, *e.g.*, *U.S. ex rel. Kreindler & Kreindler v. United Technologies Corp.*, 985 F.2d 1148, 1155-56 (2d Cir. 1993) (recognizing that "the court should consider the Rule 12(b)(1) challenge first since if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined").

1

Pangea and one of its managing members, Mark Branigan ("Branigan," and together with Pangea, "Claimants"), against Pangea's other managing member, Lakian, among others.   During the arbitration proceedings, however, Claimants poisoned the proverbial well by submitting to Arbitrator Crane – without his solicitation or any legitimate purpose – irrelevant and extremely prejudicial extra-evidentiary materials, including:

1. the criminal Indictment filed against Lakian in the U.S. District Court for the Eastern District of New York on February 3, 2015 (the "Indictment"), which, *inter alia*, charged Lakian with "securities fraud" based upon the same transaction or series of transactions at issue in the arbitration;

2. two press releases regarding Lakian's arrest and indictment issued by the Federal Bureau of Investigation ("FBI") and the U.S. Attorney for the Eastern District of New York, respectively (collectively, the "Press Releases"); and

3. excerpts from the transcript of an oral argument before the Honorable Charles E. Ramos, J.S.C. in a separate and largely unrelated professional malpractice case captioned *Pangea Capital Management, LLC, et al. v. Cohen & Gresser, LLP*, Index No. 651712/2013 (Sup. Ct., N.Y. Cty.) (the "Ramos Transcript," and together with the Indictment and the Press Releases, the "Extra-Evidentiary Materials").

It is clear that Claimants submitted the Extra-Evidentiary Materials for no other purpose than to paint Lakian as a "criminal" and a self-dealer.   Rather than rejecting the Extra-Evidentiary Materials as he should have, Arbitrator Crane considered them, thereby tainting the entire Arbitration Award.   Indeed, once Arbitrator Crane saw the Extra-Evidentiary Materials for the first time, he could never "un-see" them, and an award in favor of Claimants was a *fait accompli*.

In addition to the innate lack of fundamental fairness caused by Claimants' submission of the Extra-Evidentiary Materials, the unavoidable bias that Claimants' conduct imparted on Arbitrator Crane led him to overlook – or simply ignore – at least two well-settled and clearly applicable legal principles, which would have significantly impacted the Arbitration Award had they been applied.   First, despite a prior judicial decision to the contrary, written by Arbitrator Crane himself when he was still on the bench, Arbitrator Crane stated in the Arbitration Award

that "[p]unitive damages are *not* limited in fraud cases to acts aimed at the public generally."  This improper and legally unsupported conclusion opened the door for Arbitrator Crane to include in the Arbitration Award $1,000,000 in punitive damages against Lakian.  Second, despite Lakian's uncontroverted assertion that the alleged acts of fraud in this case are inextricably intertwined with transactions involving the purchase or sale of securities, Arbitrator Crane did not enforce Section 107 of the Private Securities Litigation Reform Act ("PSLRA"), which necessarily precludes plaintiffs from making claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO") where the predicate acts would otherwise be actionable as securities fraud.  As a result, Arbitrator Crane improperly inflated the $3,310,484 in purported damages sustained by Pangea to $9,931,452 under RICO's treble damages provision.

In sum, the undue means utilized by Claimants, together with Arbitrator Crane's manifest disregard of the law, resulted in extreme prejudice to Lakian and require that the Court vacate or modify the Arbitration Award.  As a result, the Court should deny the Petition and grant Lakian's Motion in all respects.

## STATEMENT OF FACTS

The facts relevant to the Petition and Motion are largely undisputed.  In June 2012, Branigan and Pangea commenced an action in the Supreme Court of the State of New York, New York County against Lakian, Diane Lamm ("Lamm"), and various entities allegedly owned and controlled by Lakian (the "Litigation").  *See* Petition ¶ 6.  By stipulation dated September 14, 2012 (the "Arbitration Stipulation"), the parties agreed to voluntarily discontinue the Litigation and to arbitrate all claims "arising out of or relating to" the Litigation before Judicial and Mediation Services (JAMS).  *Id.* ¶ 7; Affidavit of Dean G. Yuzek dated February 3, 2016 [CM/ECF Doc. 4] (the "Yuzek Aff."), Ex. B.

The Verified Complaint filed by Branigan and Pangea in the Litigation did *not* include a RICO claim. *See* Declaration of Steven J. Hyman submitted herewith (the "Hyman Decl."), Ex. A. Instead, Branigan and Pangea alleged the following causes of action: fraud in the inducement, fraudulent misrepresentation; breach of fiduciary duty; aiding and abetting breach of fiduciary duty; unjust enrichment; and constructive trust. *See id.* Significantly, all of the causes of action alleged in the Litigation were based upon or closely related to underlying securities transactions involving, *inter alia*, Capital L Group, LLC ("Capital L").

In their Statement of Claims in the arbitration, Branigan and Pangea asserted a RICO claim for the first time (in addition to claims for fraud in the inducement; fraudulent misrepresentation; breach of fiduciary duty; aiding and abetting breach of fiduciary duty; breach of contract; unjust enrichment; conversion; and defamation). *See* Petition ¶ 9; Yuzek Aff., Ex. A at 2; Hyman Decl., Ex. B ¶¶ 141-150. As Claimants themselves pointed out, it was undisputed during the arbitration that "the same set of operative facts underpins Claimants [sic] RICO and non-RICO claims." *See* Hyman Decl., Ex. F at 16.

Between December 9, 2014 and February 2, 2015, the parties participated in twelve (12) days of hearings before Arbitrator Crane. *See* Petition ¶ 13; Yuzek Aff., Ex. A at 10. During the hearing days, Arbitrator Crane, among other things, "accepted hundreds of documents into evidence." *See* Petition ¶ 13. Although certain post-hearing briefs were to be submitted by the parties, in accordance with Arbitrator Crane's instructions, no additional facts or evidence were to be presented after the final hearing day. *See* Yuzek Aff., Ex. A at 9-13.

Lakian was indicted on February 3, 2015, and he was arrested one day later, on February 4, 2015 – *i.e.*, after the final arbitration hearing day but before the deadline for any post-hearing submissions. *See* Hyman Decl., Exs. C-D. By letter dated February 5, 2015, counsel for Lakian

requested a three-week extension of time to submit their post-hearing memorandum in light of Mr. Lakian's arrest and indictment.  *Id.*, Ex. C.  In response to Lakian's extension request, Claimants' counsel submitted a letter in opposition, attaching, among other things, copies of the Press Releases.  *Id.*, Ex. D.   Together with their Post-Hearing Submission dated March 3, 2015 ("Claimant's Post-Hearing Submission") and their Supplemental Post-Hearing Submission dated May 4, 2015 ("Claimants' Supplemental Post-Hearing Submission"), Claimants proceeded to submit at least two (2) separate copies of the Indictment and a copy of the Ramos Transcript.  *Id.*, Exs. E-F.

On January 4, 2016, Arbitrator Crane issued an initial arbitration award (the "January 4 Award").  *See* Petition ¶ 14.  However, in response to a request by counsel for Lakian for certain corrections to the January 4 Award, he then issued the Arbitration Award and a separate Order No. 21, which together provided for the insertion of a new decretal paragraph into the Arbitration Award to clarify that Arbitrator Crane's computation of damages in the January 4 Award was non-duplicative and did not provide for multiple recoveries.  *See* Petition ¶¶ 16-18; Yuzek Aff., Ex. C; Hyman Decl., Ex. G.  In total, the Arbitration Award, which Pangea now seeks to confirm, grants Pangea almost $15.5 million, including $9,931,452 in RICO damages (after trebling) and $1,000,000 in punitive damages.  *See* Yuzek Aff., Ex. A at 37-38, 133-37.

## THE APPLICABLE LEGAL STANDARDS

Despite the deference generally afforded to arbitration awards, decisions made by arbitrators are "not totally impervious to judicial review."  *Porzig v. Dresdner, Kleinwort, Benson, North Am. LLC*, 497 F.3d 133, 139 (2d Cir. 2007).  Section 10 of the FAA "provides four statutory grounds for *vacatur* in situations that involve, generally, impropriety on the part of the arbitrators."  *Id.*  More specifically, Section 10 provides that an order vacating an arbitration award may be

entered by a court with jurisdiction if a party shows any of the following:

>   (1) . . . the award was procured by corruption, fraud, or undue means;
>
>   (2) . . . there was evident partiality or corruption in the arbitrators, or either of them;
>
>   (3) . . . the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
>   (4) . . . the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter was not made.

9 U.S.C. § 10(a).  In addition, a court may vacate an arbitration award where the award exhibits a "manifest disregard of the law" – *i.e.*, where it is clear that the arbitrator knew about the existence of a "clearly applicable" governing legal principle, but "decided to ignore it or pay no attention to it."  *See*, *e.g.*, *Jock v. Sterling Jewelers Inc.*, 646 F.3d 113, 121-22 & n.1 (2d Cir. 2011) (citing *Westerbeke Corp. v. Daihatsu Motor Co.*, 304 F.3d 200, 209 (2d Cir. 2002)).

Section 11 of the FAA sets forth the statutory criteria generally required for an order *modifying* or *correcting* an arbitration award.  *See* 9 U.S.C. § 11.  It also bestows upon the court the discretion to modify or correct an award "so as to . . . promote justice between the parties." *Id.*; *see also Spector v. Torenberg*, 852 F. Supp. 201, 208 (S.D.N.Y. 1994) (Leisure, J.) ("[I]t is implicit in this Court's authority under 9 U.S.C. § 11 to 'modify and correct the award, so as to effect the intent thereof and promote justice between the parties.'"); *Sociedad Armadora Aristomenis Panama, S.A. v. Tri-Coast S.S. Co.*, 184 F. Supp. 738, 741 (S.D.N.Y. 1960) (Herlands, J.) (noting that, rather than including mandatory language, Section 11 "invokes the discretion of the court to modify and correct the award so as to . . . promote justice between the parties").  Where,

as here, a party has used "undue means" to improperly influence the arbitration decision, an order vacating or modifying the arbitration award is warranted. *See id.*; *see also Pennsylvania Power Co. v. Local Union No. 272*, 276 F.3d 174, 181 (3d Cir. 2001) (vacating arbitration award which amounted to "nothing more than the arbitrator's personal brand of justice"); *Am. Postal Workers Union, AFL–CIO v. U.S. Postal Serv.*, 52 F.3d 359, 362 (D.C. Cir. 1995) (finding that "improper influence" may constitute "undue means" under Section 10(a)(1)).

## ARGUMENT

### POINT I

### LAKIAN'S RIGHTS WERE BLANTANTLY PREJUDICED BY CLAIMANTS' SUBMISSION AND ARBITRATOR CRANE'S CONSIDERATION OF THE INDICTMENT AND OTHER EXTRA-EVIDENTIARY MATERIALS

As an initial matter, the Court should vacate the Arbitration Award because it was "procured by . . . undue means" and a corresponding "misbehavior" by Arbitrator Crane, which resulted in both "evident partiality" on Arbitrator Crane's part and also extreme prejudice to Lakian. *See* 9 U.S.C. § 10(a)(1)-(3).

First, in response to a simple request for an extension of time by counsel for Lakian, Claimants' counsel submitted copies of the Press Releases to Arbitrator Crane.[2] *See* Hyman Decl., Ex. C-D. Claimants then proceeded to attach, refer to, and rely upon the Indictment itself in Claimants' Post-Hearing Submission. *See id.*, Ex. E at 8 n.4, 30 n.13, 62. The Indictment and the Ramos Transcript were also attached as Exhibits A and B, respectively, to Claimants' Supplemental Post-Hearing Submission. *See id.*, Ex. F. Of course, Claimants referred to and relied upon those documents throughout Claimants' Supplemental Post-Hearing Submission as well. *See id.*, Ex. F at 20, 29-33 (referring to and relying upon Indictment and Ramos Transcript

---

[2]   Notably, rather than the three-week extension requested by Lakian's counsel, Arbitrator Crane granted an extension of *only four days* (from March 2, 2015 to March 6, 2015).

in support of argument).

Claimants' act of providing the Extra-Evidentiary Materials for the thinly veiled purpose of inflaming Arbitrator Crane clearly constitutes "undue means" used to procure the Arbitration Award within the meaning of Section 10(a)(1).  Furthermore, Arbitrator Crane's consideration of the Extra-Evidentiary Materials constitutes "misbehavior" under Section 10(a)(3) as Arbitrator Crane should have, instead, rejected those materials.  To be sure, the U.S. Court of Appeals for the Second Circuit "has stated that 'undue means' may arise where a party offers evidence for the sole purpose of causing prejudice, unless the arbitrators decline to receive it and state they have not been prejudiced by it."  *Aferiat v. Grossman*, No. 96 Civ. 1774(JRK), 1998 WL 99797, at *8 (S.D.N.Y. Mar. 4, 1998) (Keenan, J.) (citing *Drayer v. Krasner*, 572 F.2d 348, 352 (2d Cir. 1978)); *see also Nat'l Casualty Co. v. First State Ins. Group*, 430 F.3d 492, 499 (1st Cir. 2005) ("The best reading of the term 'undue means' under the maxim *noscitur a sociis* is that it describes underhanded or conniving ways of procuring an award that are similar to corruption or fraud, but do not precisely constitute either.").

In this case, Arbitrator Crane did not decline to receive the Extra-Evidentiary Materials submitted by Claimants, nor did he make any statement regarding the prejudice that such materials undoubtedly caused to Lakian.  Rather, Arbitrator Crane considered the Extra-Evidentiary Materials and demonstrated "evident partiality" in favor of Claimants as a result.  Significantly, "[p]roof of actual bias is not required" to show "evident partiality" under Section 10(a)(2).  *See*, *e.g.*, *Scandinavian Reinsurance Co. v. St. Paul Fire & Marine Ins. Co.*, 668 F.3d 60, 72 (2d Cir. 2012); *Morelite Constr. Corp. v. N.Y.C. Dist. Council Carpenters Benefits Funds*, 748 F.2d 79, 84 (2d Cir. 1984) (finding that "proof of actual bias" would be an "insurmountable" standard and, thus, is "too high" to be the proper standard under Section 10).  Instead, "partiality can be inferred

'from objective facts inconsistent with impartiality.'" *Scandinavian Re*, 668 F.3d at 72 (quoting *Pitta v. Hotel Ass'n of N.Y.C., Inc.*, 806 F.2d 419, 423 n.2 (2d Cir. 1986)).

Here, Arbitrator Crane's partiality can easily be inferred from his mere receipt and consideration of the Extra-Evidentiary Materials. Indeed, given that the Indictment and Press Releases reflected the views of the FBI and the U.S. Attorney's Office, they necessarily carried significant weight (even if they were not properly in evidence for purposes of the arbitration). In addition, the Arbitration Award is littered with references to alleged "self-dealing" by Lakian. *See* Yuzek Aff., Ex. A at 62 ("The evidence presented at the hearing established that Lakian engaged in self-dealing . . . ."); *id.* at 63 ("This is 'classic self-dealing' by a fiduciary."); *id.* at 81 ("Lakian's self-dealing and self-interest transactions were rampant . . . ."); *id.* at 90 ("Lakian . . . engaged in self-dealing . . . ."). This characterization appears to have been borrowed, in large part, from the Ramos Transcript. *See* Hyman Decl., Ex. F at 31. As noted above, however, the Ramos Transcript was generated in connection with a separate and largely unrelated professional malpractice action (and, again, was not properly in evidence for purposes of the arbitration).

In short, it appears that once Arbitrator Crane accepted and considered the Extra-Evidentiary Materials, the arbitration proceeding was irreversibly contaminated and an award in favor of Claimants was a *fait accompli*. Under these circumstances, "a reasonable person would have to conclude that [Arbitrator Crane] was partial to [Claimants]." *Nat'l Indemn. Co. v. IRB Brasil Resseguros S.A.*, No. 15 Civ. 3975(NRB), 2016 WL 1030139, at *13 (S.D.N.Y. Mar. 10, 2016) (Buchwald, J.) (quotation marks and citations omitted). Moreover, it is clear, based on the "undue means" utilized by Claimants and the "evident partiality" demonstrated by Arbitrator Crane, that Lakian was denied his right to "fundamental fairness of the arbitration proceeding." *Areca, Inc. v. Oppenheimer & Co., Inc.*, 960 F. Supp. 52, 54–55 (S.D.N.Y. 1997) (Chin, J.)

(citations omitted).  As a consequence, the Arbitration Award should be vacated in its entirety. *See id.*; *see also Attia v. Audionamix, Inc.*, No. 14 Civ. 706 (RMB), 2015 WL 5580501, at *5 (S.D.N.Y. Sept. 21, 2015) (Berman, J.) (recognizing that "denial of fundamental fairness [in] the arbitration proceeding [will] warrant vacating the award"); *Square Plus Operating Corp. v. Local Union No. 917*, No. 90 Civ. 1713(LJF), 1992 WL 116610, at *2 (S.D.N.Y. May 15, 1992) (Freeh, J.) (finding that "arbitration award must be vacated in its entirety" upon showing of violation under Section 10 of the FAA).

## POINT II

## ARBITRATOR CRANE MANIFESTLY DISREGARDED THE LAW BY AWARDING PUNITIVE DAMAGES WITHOUT FINDING A PUBLIC WRONG

It appears that, after being tainted by the Extra-Evidentiary Materials that were improperly submitted by Claimants, Arbitrator Crane was determined to issue a decision consistent with the Indictment and to increase the award against Lakian by, among other things, awarding punitive damages against him.  To justify an award of punitive damages, however, Arbitrator Crane had to ignore a clearly applicable legal principle, which he knew about and which would have precluded punitive damages had it been applied.

More specifically, it is well-settled that a "fraud must be aimed at the general public in order for punitive damages to be awarded."  *Levi v. Commonwealth Land Title Ins. Co.*, No. 09 Civ. 8012 (SHS), 2013 WL 5708402, at *10 (S.D.N.Y. Oct. 21, 2013) (Stein, J.) (citing *Mayline Enterprises v. Milea Truck Sales Corp.*, 641 F.Supp.2d 304, 311 (S.D.N.Y. 2009) (McMahon, J.)); *see also Rocanova v. Equitable Life Assur. Soc. of U.S.*, 83 N.Y.2d 603, 613, 612 N.Y.S.2d 339, 342 (1994) (recognizing that punitive damages are recoverable only if the defendant's conduct was "aimed at the public generally"); *N.Y. Univ. v. Continental Ins. Co.*, 87 N.Y.2d 308, 315-16, 639 N.Y.S.2d 283, 287 (1995) (citing *Rocanova* as "reiterating" the principle that "punitive damages

may be recoverable if necessary to vindicate a public right").  In other words, "a private party seeking to recover punitive damages must not only demonstrate egregious tortious conduct by which he or she was aggrieved, *but also that such conduct was part of a pattern of similar conduct directed at the public generally.*"  *Rocanova*, 83 N.Y.2d at 613 (emphasis added).  As Judge Stein aptly explained in *Levi*:

> To the extent the New York Appellate Divisions or federal courts have stated that such a showing is unnecessary, they rely largely on *Borkowski v. Borkowski*, [39 N.Y.2d 982, 983, 387 N.Y.S.2d 233 (1976)], a one-sentence memorandum decision. . . .  *Borkowski*, however, has never been cited by the New York Court of Appeals for any purpose whatsoever, and certainly not for the proposition that punitive damages may be awarded in the absence of harm to the public. Moreover, unlike *New York University*, *Rocanova*, and *Walker* [*v. Sheldon*, 10 N.Y.2d 401, 404-05, 223 N.Y.S.2d 488, 491 (1961)], *Borkowski* is simply a "memorandum" disposition, not a full opinion; it is separately designated as such and placed in the "Memoranda" section of the hardbound version of the New York Reports, the official reports of the New York State Reporter. . . . For this reason, and because later New York Court of Appeals opinions support the view that a fraud must be aimed at the public generally to support an award of punitive damages . . . , this Court adheres to that requirement.

*Levi*, 2013 WL 5708402, at *10 (internal citations omitted); *see also TVT Records v. Island Def Jam Music Group*, 412 F.3d 82, 94 (2d Cir. 2005) (finding that the "public wrong" rule expounded upon in *New York University* and *Rocanova* "has not been changed by the Court of Appeals" and, thus, the Second Circuit has "no reason to question its continued vitality"); *W.S.A., Inc. v. ACA Corp.*, Nos. 94 Civ. 1493(CSH), 94 Civ. 1868(CSH), 1998 WL 635536, at *2 (S.D.N.Y. Sept. 15, 1998) (Haight, J.) ("*Borkowski* was decided almost two decades before *Rocanova*; to the extent that they are in conflict, familiar principles compel the result suggested by *Rocanova*. . . . [I]n the wake of *Rocanova*, the lower New York appellate courts have consistently applied the 'public wrong' rule to tort and contract cases alike.").

11

Significantly, in at least one of the decisions that he issued while still serving as a Justice of the Supreme Court of the State of New York, Arbitrator Crane himself recognized the "public wrong" requirement as expressed by the New York Court of Appeals five years earlier in *Rocanova*. More specifically, in *Banc of Am. Comm. Fin. Corp. v. Issacharoff*, 188 Misc.2d 790, 798, 728 N.Y.S.2d 861, 868 (Sup. Ct., N.Y. Cty. 2000) (Crane, J.), then Justice Crane wrote as follows: "[b]ecause plaintiff's alleged conduct 'was focused upon [defendants] and not aimed systematically at the public generally' . . . , [defendants'] demand for punitive damages is dismissed." *Id.* (citing *Am. Transit Ins. Co. v. Associated Int'l Ins. Co.*, 261 A.D.2d 251, 252, 690 N.Y.S.2d 237, 238 (1st Dep't 1999)). Nonetheless, in awarding punitive damages in favor of Pangea in this case, Arbitrator Crane ignored his own prior decision and *Rocanova*, the controlling precedent, and cited *Borkowski* in support of the opposite, legally deficient conclusion: "*[p]unitive damages are not limited in fraud cases to acts aimed at the public generally.*" *See* Yuzek Aff., Ex. A at 38 n.26 (emphasis added).

Based on the foregoing, the inescapable conclusion is that Arbitrator Crane knew of the legal principle governing awards of punitive damages in New York, yet either ignored it or simply refused to apply it.[3] This is the epitome of "manifest disregard of the law," which warrants *vacatur*

---

[3]    Had Arbitrator Crane properly applied the "public wrong" requirement, as expressed in *Rocanova* and its progeny, he would have been unable to award punitive damages against Lakian since Claimants alleged only harm to a small number of investors in Capital L and never alleged any harm inflicted upon or aimed at the public at large. *See* Hyman, Ex. B.

In the absence of a finding of a public wrong, Arbitrator Crane's award of punitive damages further violated the public policy of the State of New York. As the Second Circuit has recognized, a court may "refuse enforcement of an arbitrator's award on public policy grounds," so long as the public policy is "well defined and dominant" and may be "ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests." *Schwartz v. Merrill Lynch & Co.*, 665 F.3d 444, 452 (2d Cir. 2011) (internal quotations and citations omitted); *see also Roy v. Buffalo Philharmonic Orchestra Society, Inc.*, No. 15-cv-0283(MAT), 2016 WL 492706, at *8 (W.D.N.Y. Feb. 9, 2016) (recognizing same standard for "set[ting] aside arbitration award on the basis of public policy"). As set forth above, the public policy underlying the "public wrong" requirement for punitive damages satisfies all of these requirements. For this additional reason, the Court should vacate the Arbitration Award.

of an arbitration award.  *See*, *e.g.*, *Jock*, 646 F.3d at 121-22.  Accordingly, the Arbitration Award should be vacated in its entirety (or, at very least, reduced in an amount equal to the punitive damages included therein (*i.e.*, $1,000,000)).

**POINT III**

**ARBITRATOR CRANE MANIFESTLY DISREGARDED THE LAW BY
FAILING TO ENFORCE THE PSLRA'S BAR TO RICO CLAIMS**

Arbitrator Crane manifestly disregarded the law in another crucial respect, as well.  More specifically, despite Lakian's unambiguous and undisputed assertion that the claims asserted by Claimants in the arbitration were based upon conduct closely and inextricably related to the purchase or sale of securities, Arbitrator Crane failed to enforce Section 107 of the PSLRA.

"Section 107 of the PSLRA—which was enacted as an amendment to the RICO statute and accordingly is often referred to as the 'RICO Amendment'—provides that 'no person may rely upon any conduct that *would* have been actionable as fraud in the purchase or sale of securities to establish a violation of [RICO].'"  *MLSMK Inv. Co. v. JP Morgan Chase & Co.*, 651 F.3d 268, 273-74 (2d Cir. 2011) (citing 18 U.S.C. § 1964(c)) (emphasis added).  "[B]efore the RICO Amendment, a plaintiff could allege a private civil RICO claim for securities laws violations sounding in fraud because 'fraud in the sale of securities' was listed as a predicate offense."  *Id.* (internal quotations and citations omitted).  Accordingly, before the RICO Amendment, "plaintiffs regularly elevated fraud to RICO violations because RICO offered the potential bonanza of recovering treble damages."  *Id.* (internal quotations and citations omitted). That tactic, however, is now – specifically and statutorily – barred by the RICO Amendment, which precludes "private causes of action under RICO for predicate acts that describe conduct that would otherwise be actionable as securities fraud."  *See id.* (quoting *Thomas H. Lee Equity Fund V, L.P. v. Mayer Brown, Rowe & Maw LLP*, 612 F.Supp.2d 267, 281 (S.D.N.Y. 2009) (Lynch, J.)).

13

Notably, in passing the RICO Amendment, Congress explicitly stated its intention to bar plaintiffs from "plead[ing] other specific offenses, such as mail or wire fraud, as predicate acts under civil RICO if such offenses are based on conduct that would have been actionable as securities fraud." *Thomas H. Lee*, 612 F.Supp.2d at 282 (citations omitted); *see also* H.R. CONF. REP. No. 104-369, at 47 (1995), reprinted 1995 U.S.C.C.A.N. 730, 746; *Fezzani v. Bear, Stearns & Co., Inc.*, No. 99 Civ. 0793 (RCC), 2005 WL 500377, at *3 (S.D.N.Y. Mar. 2, 2005) (Casey, J.) (noting that the RICO Amendment "also bars recasting conduct that would be actionable securities fraud as mail or wire fraud").  As this Court further recognized in *Fezzani*:

> The RICO [A]mendment was intended to eliminate "the so-called 'treble-damages blunderbuss of RICO' in securities fraud cases." *Matthews v. Kidder, Peabody & Co.*, 161 F.3d 156, 164 (3d Cir. 1998) (quoting 141 CONG. REC. H2771 (daily ed. Mar. 7, 1995) (statement of Rep. Cox)). Were courts to permit RICO claims whenever a plaintiff failed to state a cause of action for securities fraud against a particular defendant, plaintiffs would then have the incentive to present only those facts that, if taken as true (as they must be on a motion to dismiss), would not form the basis of a securities-fraud claim. The plaintiff as master of the complaint . . . could reap the benefits of a RICO claim complete with the threat of treble damages by merely failing to state a cause of action for securities fraud against a particular defendant . . . .

*Fezzani*, 2005 WL 500377, at *4-5 (internal citations omitted).  More recently, the Second Circuit adopted the reasoning of *Fezzani* and *Thomas H. Lee* in holding that the RICO Amendment "bars civil RICO claims alleging predicate acts of securities fraud, *even where a plaintiff cannot itself pursue a securities fraud action against the defendant.*" *MLSMK Inv. Co.*, 651 F.3d at 277 (emphasis added).

In their Statement of Claim in this case, Claimants alleged that Lakian fraudulently induced a series of investments into Capital L.  *See* Hyman Decl., Ex. B ¶ 141.  Specifically, Claimants alleged that Lakian fraudulently induced Pangea's initial purchase of preferred units in Capital L

by misrepresenting the terms of the deal.  *Id.*  ¶¶ 21-59.  Likewise, Claimants alleged that Lakian fraudulently induced certain investors to purchase units of Capital L by making false representations about the financial condition of Capital L and the intended use of the proceeds of their purchases.  *Id.* ¶¶ 107-109.  Based on these allegations alone, it is clear that Claimants' claims in the arbitration, including their RICO claim, were founded upon alleged acts of fraud in connection with the purchase or sale of securities.  *See*, *e.g.*, 15 U.S.C. § 78c(a)(10) (broadly defining the term "security"); *Tcherepnin v. Knight*, 389 U.S. 332, 338, 88 S. Ct. 548, 554 (1967) (internal quotations and citations omitted) (recognizing that the definition of the term "security" under federal law "embodies a flexible rather than a state principle, one that is capable of adaptation to meet the countless and variable schemes devised by those wo seek the use of the money of others on the promise of profits").

Ironically, the Indictment – which Claimants so fervently and improperly placed before Arbitrator Crane (*see* Point I above) – supports the view that the predicate acts underlying the Arbitration Award were related to "securities" transactions for which a RICO claim should not have been allowed.  Indeed, the first and third counts of the Indictment charge Lakian with (i) conspiracy to commit securities fraud and (ii) securities fraud, respectively, arising out of, among other things, the investment by Pangea in Capital L.  *See* Hyman Decl., Ex. F at Ex. A (Indictment). In other words, the U.S. Department of Justice has taken the position that the units of Capital L that Pangea purchased are "securities" within the meaning of federal securities laws and that at least some of the conduct at issue in the arbitration would have been actionable as securities fraud if Claimants had chosen to plead it that way.

Furthermore, during the arbitration, it was undisputed that Lakian was "arrested and criminally indicted for . . . the very [same] fraudulent scheme" alleged by Claimants in their

Statement of Claim.  *See* Hyman Decl., Ex. E at 8 n.4.  In Claimants' Supplemental Post-Hearing Submission, Claimants further noted that, "as set forth more fully in Claimants' pre- and post-hearing briefs, and as conceded by the Respondents . . . , *the same set of operative facts underpins Claimants [sic] RICO and non-RICO claims*: namely the facts relating to Pangea's acquisition of a controlling interest in Capital L, Lakian's role therein, and his . . . subsequent looting of that entity and Pangea's investment therein . . . ."  *See* Hyman Decl., Ex. F at 16 (footnote omitted) (emphasis added).  Claimants also asserted that "the fact that [they] did not assert a RICO claim in the [Litigation] is of little import *given that the claims underscoring the complaint in that action are virtually identical to those asserted in the [Statement of Claims], and thus arise from the same operative facts as those underpinning Claimants' RICO claim.*"  *Id.* at 17 (emphasis added).

Based on the foregoing, it is unmistakably clear that Claimants' RICO claim was founded upon Lakian's alleged "predicate acts" involving securities.  At the very least, "[t]he alleged fraud and the [securities] transactions coincided and were closely and integrally related," thereby making Claimants' allegations potentially "actionable as securities fraud" within the meaning of the RICO Amendment.  *See*, *e.g.*, *Stechler v. Sidley, Austin Brown & Wood, LLP*, 382 F.Supp.2d 580, 598 (S.D.N.Y. 2005) (Scheindlin, J.).  As Judge Scheindlin explained in *Stechler*, the question of "[w]hether an alleged fraud is in connection with a securities transaction cannot be made to turn on whether, hypothetically, the fraud might have been accomplished without the involvement of securities."  *Id.*  "All that matters is that the alleged fraud which is actually . . . before the Court *did* involve securities."  *Id.*; *see also Blythe v. Deutsche Bank AG*, 299 F.Supp.2d 272, 278-83 (S.D.N.Y. 2005) (Scheindlin, J.) (finding that "the predicate acts of mail and wire fraud alleged by plaintiff are actionable as securities fraud . . . to the extent that those acts of fraud coincide with and are integrally related to the purchase and sale of securities" and, therefore, dismissing RICO

16

claim based on those predicate acts).

By concluding that the RICO Amendment did not "serve as a bar to Claimants' claim to recover damages for violation of RICO" (*see* Yuzek Aff., Ex. A at 104-05), Arbitrator Crane allowed Claimants' "artful pleading" of their claims to prevail over their substance.  However, such attempts to "artfully plead" have been explicitly rejected both by the Second Circuit and by this Court.  *See MLSMK Inv. Co.*, 651 F.3d at 274 (recognizing that the purpose of the PSLRA bar is "to prevent litigants from using artful pleading to boot-strap securities fraud cases into RICO cases, with their threat of treble damages"); *OSRecovery, Inc. v. One Groupe Int'l, Inc.*, 354 F.Supp.2d 357, 368-69 (S.D.N.Y. 2005) (Kaplan, J.) (holding that "plaintiffs cannot avoid the PSLRA through artful pleading").  Decisions from courts outside the Second Circuit are also in accord.  *See*, *e.g.*, *Bald Eagle Area School Dist. v. Keystone Financial, Inc.*, 189 F.3d 321, 329-30 (3d Cir. 1999) ("Allowing such surgical presentation of the cause of action here would undermine the congressional intent behind the RICO Amendment."); *Gertz v. Ponsoldt*, 297 F.Supp.2d 719, 730 (D. Del. 2003) ("[A] plaintiff cannot circumvent the PSLRA's exclusion of securities fraud as a RICO predicate act through artful pleading.").

For all of these reasons, Arbitrator Crane's failure to enforce the RICO Amendment to bar Claimants' RICO claim was not just a legal error, but rather constituted "manifest disregard of the law," warranting *vacatur* of the Arbitration Award.  *See*, *e.g.*, *Jock*, 646 F.3d at 121-22.  Because the allegedly fraudulent conduct in this case was clearly and undisputedly related to securities transactions, Arbitrator Crane had an obligation to apply the statutory bar to Claimants' RICO claim. Instead, given the bias towards penalizing Lakian caused by Claimants' improper submission of the Extra-Evidentiary Materials, he simply glossed over it.[4]  As a result, the Court

---

[4]    Further evidencing his improperly inflated desire to punish Lakian to the fullest extent possible, Arbitrator Crane ignored the fact that Lakian still held – and, indeed, continues to hold – an equity interest

should vacate the Arbitration Award in its entirety (or reduce the award under RICO from $9,931,452 to $3,310,484 to account for improper treble damages).

## **CONCLUSION**

For the reasons set forth above, Lakian respectfully requests that the Court enter an Order: (i) denying the Petition; (ii) granting the Motion; and (iii) awarding Lakian such other and further relief as the Court deems just and proper.

**[*Signature on Following Page*]**

---

in Pangea. Had Arbitrator Crane accorded this fact its proper weight, it would have been well within his discretion to offset the final damages amount included in the Arbitration Award in an amount proportionate with Lakian's valid equity interest.

Although Pangea acknowledges in its Petition that Lakian continues to be a managing member of Pangea (*see* Petition ¶ 6), it has attempted to argue in opposition to Lakian's motion to dismiss that "Lakian, by virtue of the Arbitration Award, was necessarily stripped of his membership interest in Pangea to avoid the inequitable result of having Lakian profit from his own fraud and racketeering activities by sharing in Pangea's recovery." *See* CM/ECF Doc. 22, pp. 32-33. However, the Arbitration Award does not contain any language to even suggest that Lakian has been "stripped of his membership interest" in Pangea. *See* Yuzek Aff., Ex. B. Nor could Arbitrator Crane have made such a finding given, *inter alia*, that no claim for such relief was before him and that Pangea's Amended and Restated Limited Liability Company Agreement dated September 22, 2009 provides no mechanism allowing for that result. *See* Hyman Decl., Ex. H. It is a "fundamental principle under Delaware law that a majority of the members (or stockholders) of a business entity, unless expressly granted such power by contract, have no right to take the property of other members (or stockholders)." *Walker v. Resource Development Co. Ltd., LLC*, 791 A.2d 799, 815 (Del. Ch. 2000). While "[o]ther mechanisms may be available to them to recast their business relations to eliminate persons from the enterprise, . . . [the law does] not provide for the forfeiture of economic rights, requiring instead that the persons whose interests are eliminated are entitled to receive fair value therefor." *Id.* New York law would compel the same result: "[t]here is no Limited Liability Company Law provision addressing the expulsion of a member" and, "[a]s such, in the absence of a provision in the operating agreement providing for expulsion, a limited liability company cannot expel a member." *Garcia v. Garcia*, 33 Misc.3d 1237(A), 941 N.Y.S.2d 537 (Sup. Ct., Kings Cty. 2011) (citing *Man Choi Chiu v. Winston Chiu*, 71 A.D.3d 646, 647, 896 N.Y.S.2d 131, 132 (2d Dep't 2010)).

Dated: New York, New York
      April 14, 2016

                    Respectfully submitted,

                    McLAUGHLIN & STERN, LLP

                    By:       /s/ Steven J. Hyman
                          Steven J. Hyman, Esq.
                          Daniel J. Horwitz, Esq.
                       Matthew D. Sobolewski, Esq.
                        Chester R. Ostrowski, Esq.

                    260 Madison Avenue
                    New York, New York 10016
                    Tel.: (212) 448-1100
                    Fax: (212) 448-0066
                    shyman@mclaughlinstern.com
                    dhorwitz@mclaughlinstern.com
                    msobolewski@mclaughlinstern.com
                    costrowski@mclaughlinstern.com

                    *Attorneys for Respondent John R. Lakian*

19